

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
11/27/2007

| | | |
|---|---|---|
| IN RE: | § | |
| CONTRACTOR TECHNOLOGY, LTD | § | CASE NO: 05-37623 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| RONALD J SOMMERS CH 7 TRUSTEE | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 07-3092 |
| | § | |
| CONCRETE STRAIGHTLINE SAWING, | § | |
| L.L.C. | § | |
| Defendant(s) | § | |

<u>**MEMORANDUM OPINION**</u>

For the reasons set forth below, the Court denies Defendant's motion for summary judgment. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

*Background*

On May 13, 2005, Contractor Technology, Ltd. ("Debtor") filed a petition for chapter 11 bankruptcy relief. The case was converted to a case under chapter 7 on June 23, 2005. Debtor was the prime contractor on various public works projects in Texas. Concrete Straight Line Sawing, L.L.C. ("Straight Line") was hired by Debtor to furnish material and labor needed for completion of the projects. On February 19, 2007, the Trustee filed this adversary proceeding against Straight Line seeking to recover $209,789.79 in alleged preferential payments. Straight Line does not dispute receipt of the $209,789.79. Straight Line, however, argues that some, if not all, of the payments it received fall within various exceptions to the general preference rule. Specifically, Straight Line asserts defenses of transfers received in the ordinary course of business and transfers for new value.

### *Summary Judgment Standard*

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial. At all times, a court views the facts in the light most favorable to the non-moving party. *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006). However, to weigh evidence would result in a credibility determination which is not part of the summary judgment analysis. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). A court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant bears the burden of proof, a successful motion must present evidence that would entitle the movant to judgment at trial. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Warfield*, 436 F.3d at 557. The non-moving party has a duty to respond with specific evidence demonstrating a triable issue of fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). When identifying specific evidence in the record, the non-movant must articulate how that evidence supports its position. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301

(5th Cir. 2004).

### *Ordinary Course of Business*

Section 547 allows a trustee to avoid payments to creditors which were made (1) to or for the benefit of a creditor; (2) on account of antecedent debt; (3) while the debtor was insolvent; (4) within 90 days of the date of filing the petition; which (5) enables the creditor to receive more that it would receive in a chapter 7 bankruptcy.  11 U.S.C. § 547(b)(1) – (5).  The Trustee's avoidance power, however, is subject to the exceptions provided for in § 547(c).  One of these exceptions is for transfers received in the ordinary course of business.  Section 547(c)(2) provides that a trustee may not avoid a transfer:

> to the extent that such transfer was—(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).[1]

The ordinary course of business defense is designed to protect normal business transactions and enable the struggling debtor to continue operating its business.  *In re Issac Leaseco, Inc.,* 389 F.3d 1205, 1210 (11th Cir. 2004).  A creditor asserting the affirmative defense that a payment was in the ordinary course of business must prove all statutory elements (§ 547(c)(2)(A), (B) and (C)) by a preponderance of the evidence in order to prevail.  *G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co.),* 439 F.3d 233, 239 (5th Cir.2006). The first two elements address whether the transfer was ordinary as between the two parties, while the third element considers the relevant industry standards.  *Gulf City Seafoods, Inc., v. Ludwig Shrimp Co. (In re Gulf City Seafoods*, *Inc.),* 296 F.3d 363, 368, n.4 (5th Cir.

---

[1] Although this adversary proceeding was filed after the Bankruptcy Abuse Prevention & Consumer Protection Act, the amendments to (c)(2) are "effective for all cases filed on or after Oct. 17, 2005."  The bankruptcy case was filed prior to October 17, 2005.  The Court, therefore, applies 11 U.S.C. § 547(c)(2) in effect at the time the bankruptcy proceeding was filed.

2002).

Under the first prong of the test, Straight Line must establish that Debtor incurred the debt in the ordinary course of Straight Line's and Debtor's general business affairs.

Straight Line is in the business of sawing concrete and works as a subcontractor for various contractors. Debtor is in the business of undertaking construction projects. Such business includes hiring subcontractors. Thus, each party customarily engages in this sort of transaction and the debt was incurred in the ordinary course of Straight Line's and Debtor's individual business affairs. The first prong is satisfied.

The second prong requires that the transfer was made according to the ordinary course of Straight Line's and Debtor's business affairs as between the parties. There is no precise legal test for evaluating whether a transfer complies with the second prong of § 547(c)(2). *GasMark Ltd. Liquidating Trust v. Louis Dreyfus,* 158 F.3d 312, 317-18 (5th Cir. 1998). Rather, the analysis tends to be very fact specific, with courts typically comparing prior dealings between the parties with their dealings during the preference period. *In re Tulsa Litho Co.,* 229 B.R. 806, 809 (10th Cir. BAP 1999); *GPR Holdings, LLC v. Duke Energy Trading and Mktg., LLC (In re GPR Holdings, LLC),* No. 01-36736-SAF-11, 2005 Bankr. LEXIS 1059, *42 (Bankr. N.D. Tex. May 27, 2005). Factors on which a court may rely in determining whether a payment is ordinary for purposes of § 547(c)(2)(B) include: (1) length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activities; and (4) the circumstances under which the payment was made. *See, e.g.,* 5 COLLIER ON BANKRUPTCY ¶ 547.04[2][a][ii][B] (15th ed. rev. 2005); *Barber v. Golden Seed Co.,* 129 F.3d 382, 390 (7th Cir. 1997); *In re Grand Chevrolet, Inc.,* 25 F.3d 728, 732 (9th Cir. 1994); *In re Fred Hawes Org., Inc.,* 957 F.2d 239, 244 (6th Cir. 1992).

4

To support its argument that transfers within the preference period are within the ordinary terms of Straight Line's and Debtor's business affairs, Straight Line provided two schedules of payments received.  The first schedule reflects the days each invoice was outstanding for all payments received prior to the preference period.  The second schedule reflects the same for payments received during the preference period.

The contract between Straight Line and Debtor allegedly required payment terms of net 30.  There are 124 payments reflected on the payment schedule for payments received prior to the preference period (from March 11, 2004 through January 27, 2005).  Of these payments, approximately thirty-five were paid later than thirty days after the invoice date.

On the schedule of payments received by Straight Line during the preference period, there are forty payments.  Of these payments, thirty-three were paid later than thirty days after the invoice date.  Debtor, therefore, prior to the preference period, paid 28.2% of its payments to Straight Line outside of the alleged contract terms.  During the preference period, however, 82.5% of Debtor's payments fell outside of the alleged contract terms.

It is Straight Line's burden to present evidence that would otherwise entitle it to a judgment in its favor at trial.  *Hart,* 343 F.3d at 764.  The Court finds that the schedules presented are insufficient to support a finding that the transfers were made in the ordinary course of business.  Indeed, from a review of the schedules, it appears that the days the invoices remained outstanding during the preference period was significantly different than that prior to the preference period.  While at trial Straight Line may be able to demonstrate circumstances showing these payments were in the ordinary course of business, the evidence is insufficient to support a grant of summary judgment.[2]

---

[2] Because Straight Line failed to establish the second prong of § 547(c)(2), the Court need not examine the evidence under § 547(c)(2)(C).

### New Value Exception

Under § 547(c)(4), when a creditor extends new value subsequent to an otherwise preferential transfer, a portion of the transfer equal to the amount of new value extended may be protected from the trustee's avoidance powers.  *E.g. In re Massan Shipping Indus., Inc.*, 272 B.R. 625, 631 (E.D. La. 2001).  The purpose of this provision is "to protect creditors who have furnished and been paid for ongoing supplies or revolving credit to a debtor in distress, because such transactions fortify the debtor's business and may avert bankruptcy."  *G.H. Leidenheimber Baking Co.*, 439 F.3d at 241.

> Section 547(c)(4) provides that the trustee in bankruptcy may not avoid a transfer:
>
> to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4).  The Fifth Circuit applies a "transfer-by-transfer" approach in analyzing defenses asserted under § 547(c)(4).  *E.g. G.H. Leidenheimber Baking Co.*, 439 F.3d at 241 (citing *Laker v. Vallette (In re Toyota of Jefferson, Inc.)*, 14 F.3d 1088 (5th Cir. 1994)).  The approach considers whether "(1) new value was extended after the preferential payment sought to be avoided, (2) the new value is not secured with an otherwise unavoidable security interest, and (3) the new value has not been repaid with an otherwise unavoidable transfer."  *Id.* (citing *Toyota of Jefferson*, 14 F.3d at 1093 n.2).

In developing the three-prong test, the Fifth Circuit rejected the "net result" rule, "whereby all new value from subsequent advances was totaled and deducted from all eligible preference payments."  *Id.* (citing *Toyota of Jefferson*, 14 F.3d 1088).  The Fifth Circuit has, however, adopted the *Garland* rule.  *G.H. Leidernheimer Banking Co.,* 439 F.3d at 242.  The *Garland* rule permits "prior preferences to be carried forward and offset against extensions of

new value that followed them." *In re Micro Innovations Corp.*, 185 F.3d 329, 339, n.5 (5th Cir.

1999) (citing *In re Thomas Garland, Inc.*, 19 B.R. 920 (Bankr. E.D. Mo. 1982)).  In *In re Micro*

*Innovations Corp.*, the Court summarized this rule as follows:

> where two or more successive preferences are followed by the initial extension of
> new value and it is in an amount larger than the most recent of the prior
> preferences, the excess may be applied to shield the earlier preference (or
> preferences) to the extent that such excess is not larger than the total value of all
> such earlier preferences (similarly, a large preference payment may "carry over"
> past one subsequent small extension of new value and ultimately be fully
> sheltered by one or more still later extensions of new value).

*Id.* at 336 (citing *Garland*, 19 B.R. 920).

In his Complaint, Trustee seeks to avoid $209,787.79 paid to Straight Line by the

following transfers:

| Check No. | Check Date | Clear Date | Amount |
|-----------|-----------|-----------|--------------|
| 48003 | 2/09/05 | 2/17/05 | $2,498.51 |
| 48546 | 2/28/05 | 3/07/05 | $31,195.36 |
| 48545 | 2/28/05 | 3/14/05 | $56,792.07 |
| 561 | 4/05/05 | 4/07/05 | $38,551.62 |
| 658 | 4/07/05 | 4/21/05 | $24,733.62 |
| 927 | 4/25/05 | 4/28/05 | $26,117.53 |
| 3140 | 5/05/05 | 5/10/05 | $29,901.08 |

To support its defense of "new value", Straight Line produced a chart showing an invoice

date, payment date, invoiced amount, preferential payment amount and amount of new value

extended.  Straight Line asserts that "new value" was provided to Debtor in the form of concrete

sawing on an unsecured basis.  The chart begins with an invoice dated January 14, 2005 and ends

with an invoice dated March 23, 2005.[3]  The "payment date" in Straight Line's chart corresponds

with the "Check Date" in the Trustee's Complaint.  The Court, therefore, concludes that Straight

---

[3] The Court rejects the analysis provided in Straight Line's chart.  The chart essentially utilizes a "net result" method
of determining preference exposure.  This method has been rejected by the Fifth Circuit.  *G.H. Leidenheimer
Baking Co.*, 439 F.3d at 241 (citing *Laker v. Vallette (In re Toyota of Jefferson, Inc.)*, 14 F.3d 1088 (5th Cir. 1994))

Line's "payment date" refers to the dates on the checks rather than the dates the checks were received by Straight Line.

No further evidence has been provided of the dates the checks were received by Straight Line. The Court finds this lack of evidence problematic. In analyzing a new value defense, the transfer sought to be avoided is considered to have been made on the date the check is *received* by the creditor. 5 COLLIER ON BANKRUPTCY ¶ 547.04[4][b] (citing *Barnhill v. Johnson*, 503 U.S. 393, 401 (1992) (emphasis added); *In re Elva, Inc.*, 235 B.R. 486, 487 (10th Cir. BAP 1999); *Hall-Mark Electronics Corp. v. Sims* (*In re Lee*), 179 B.R. 149, 164 (9th Cir. BAP 1995); *The Official Committee of Unsecured Creditors v. Columbia Forest Prods., Inc. (In re Hardwood P-G, Inc.)*, No. 06-5278-LMC, 2007 WL 1728653, * 9 (Bankr. W.D. Tex. June 12, 2007).

Although from a practical perspective, the evidence would allow a partial grant of summary judgment from the dates the checks cleared,[4] the law demands that it is the defendant's burden to demonstrate the dates the checks were received. *See Id.* Without such date, the Court does not have the necessary reference point for applying new value offsets to Straight Line's preference exposure. Accordingly, Straight Line's motion for summary judgment is denied. A separate order will issue.

Signed at Houston, Texas, on November 26, 2007.

MARVIN ISGUR
United States Bankruptcy Judge

---

[4] It is axiomatic that Straight Line must have received the checks prior to each corresponding "clear date". Accordingly and as an example of the proper application of the new value defense, the Court has attached a chart as Exhibit "A" demonstrating Straight Line's total remaining preference exposure if it were assumed that the check clear dates were the day after the checks were received.

# EXHIBIT A

| CHECK NUMBER | CHECK CLEAR DATE | INVOICE DATE[5] | AMOUNT CLEARED | NEW VALUE | HYPOTHETICAL REMAINING PREFERENCE |
|---|---|---|---|---|---|
| 48003 | 2/17/2005 | | $2,498.51 | | $2,498.51 |
| | | 2/17/2005 | | $14,497.66 | $0.00 |
| | | 2/19/2005 | | $2,424.86 | $0.00 |
| | | 2/21/2005 | | $4,335.00 | $0.00 |
| | | 2/21/2005 | | $3,091.40 | $0.00 |
| | | 2/22/2005 | | $1,189.81 | $0.00 |
| | | 2/26/2005 | | $1,573.34 | $0.00 |
| | | 2/28/2005 | | $1,824.68 | $0.00 |
| | | 2/28/2005 | | $11,643.88 | $0.00 |
| | | 3/1/2005 | | $3,474.74 | $0.00 |
| | | 3/1/2005 | | $6,639.05 | $0.00 |
| | | 3/1/2005 | | $1,802.40 | $0.00 |
| | | 3/3/2005 | | $3,590.94 | $0.00 |
| | | 3/4/2005 | | $4,758.75 | $0.00 |
| | | 3/5/2005 | | $5,769.48 | $0.00 |
| 48546 | 3/7/2005 | | $31,195.36 | | $31,195.36 |
| | | 3/8/2005 | | $1,200.00 | $29,995.36 |
| | | 3/9/2005 | | $5,795.59 | $24,199.77 |
| | | 3/10/2005 | | $8,764.41 | $15,435.36 |
| | | 3/11/2005 | | $6,951.70 | $8,483.66 |
| 48545 | 3/14/2005 | | $56,792.07 | | $65,275.73 |
| | | 3/14/2005 | | $4,530.43 | $60,745.30 |
| | | 3/14/2005 | | $250.00 | $60,495.30 |
| | | 3/17/2005 | | $5,779.86 | $54,715.44 |
| | | 3/18/2005 | | $1,200.00 | $53,515.44 |
| | | 3/19/2005 | | $5,510.10 | $48,005.34 |
| | | 3/21/2005 | | $10,569.12 | $37,436.22 |
| | | 3/23/2005 | | $8,415.72 | $29,020.50 |
| 561 | 4/7/2005 | | $38,551.62 | | $67,572.12 |
| 658 | 4/21/2005 | | $24,733.62 | | $92,305.74 |
| 927 | 4/28/2005 | | $26,117.53 | | $118,423.27 |
| 3140 | 5/10/2005 | | $29,901.08 | | $148,324.35 |
| | | | | | |
| **TOTAL** | | | **$209,789.79** | | **$148,324.35** |

[5] The invoices provided by Straight Line include a "job date." The invoice date is the same as the job date. No party has raised the issue that the job date is not the actual date the services were provided. Accordingly, the Court accepts the invoice date as the date the services were provided